IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| BANG LAUGH LOVE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:23cv00633 |
| v. | ) | |
| | ) | |
| BREA VIRAGH AND MONIQUE | ) | By: Hon. Robert S. Ballou |
| MCDONELL, collectively a/k/a | ) | United States District Judge |
| PIPPA GREEN | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiff Bang Laugh Love, LLC ("BLL") alleges trademark infringement and unfair competition under the Lanham Act and Virginia law, relating to its registered PIPPA GRANT word mark which is associated with books in the "subgenre of romantic comedy fiction with ice hockey and baseball themes." Compl. ¶ 16, Dkt. 1. BLL alleges Defendants Brea Viragh and Monique McDonell began wrongfully writing and publishing books under the PIPPA GREEN name, in the same subgenre as PIPPA GRANT, causing consumer confusion. Defendants rebranded PIPPA GREEN as EDEN DUNN, but BLL contends consumers continue to confuse the PIPPA GREEN mark with the registered PIPPA GRANT mark. *Id.* ¶ 40.

Defendants have answered the Complaint and bring the following three counterclaims, declaratory judgment of noninfringement (Counterclaim Count One), cancellation of registration (Counterclaim Count Two), and fraudulent procurement of a federal trademark registration (Counterclaim Count Three). Dkt. 24. BLL seeks to dismiss Counterclaim Count Three for fraudulent procurement and to strike Affirmative Defense No. Four, which asserts that BLL's "registration was obtained fraudulently and is not entitled to protection" (Answer at 10, Dkt. 24). Dkt. 27. Because Defendants fail to meet the heightened pleading standard for fraud and fail to

allege a willful intent to deceive the United States Patent and Trademark Office ("USPTO"), I will grant BLL's Motion to Dismiss and Motion to Strike. Dkt. 27.

I.      Background[1]

BLL owns a federal trademark registration for the word mark PIPPA GRANT, with a registration date of August 20, 2019, and a date of first use of October 30, 2017 ("the Registration").[2] Dkt. 24 at 13; Dkt. 24-1. The Registration states that the name "shown in the mark identifies Jamie Farrell, whose consent(s) to register is made of record." *Id.* BLL filed its application for the trademark registration on January 18, 2019, and thereafter filed a Voluntary Amendment on February 1, 2019, attaching an Affidavit, signed by Jamie Farrell stating:

> The above-referenced mark contains the pen name "Pippa Grant" which identifies me, Jamie Farrell, a living individual whose consent is of record. This submitted Affidavit is provided in the filing of a trademark application on the mark "Pippa Grant."
>
> 1. I, Jamie Farrell, am the author of a series of self-published books branded with my pen name, Pippa Grant, which identifies me.
>
> 2. I self-publish the books, and therefore control their quality.

Dkt. 24-2. The Voluntary Amendment also attached a document entitled "Written Consent for use of Name" signed by Jamie Farrell stating:

> The above-referenced mark contains the name "Pippa Grant" which identifies me, Jamie Farrell, a living individual whose consent is of record. This submitted written consent is provided in the filing of a trademark application on "Pippa Grant." As required:
>
> I, Jamie Farrell, consent to the use and registration of my pen name, Pippa Grant, as a trademark with the United States Patent and Trademark Office.

---

[1] The court accepts a non-moving party's allegations as true when ruling on a motion to dismiss; Defendants are the non-moving party here, thus, the facts contained in the Answer are taken as true. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

[2] Federal registration "confers important legal rights and benefits on trademark owners who register their marks" including serving as: (1) constructive notice of the registrant's claim of ownership of the mark; (2) prima facie evidence of the validity of the registered mark; and (3) making a mark "incontestable" once the mark has been registered for five years. *See Matal v. Tam*, 582 U.S. 218, 226–27 (2017) (citations and quotations omitted).

Dkt. 24-2. The Voluntary Amendment contains a "miscellaneous statement" indicating that the Affidavit is "signed by Applicant to show that she self-publishes here [sic] books branded with the pen name Pippa Grant[3], which identifies her. Further the Affidavit states that the books are self-published and Jamie Farrell controls their quality." *Id.*

In 2021 Defendants, who allege they had "no knowledge" of the PIPPA GRANT trademark registration, "began to co-write, publish, and sell several works of fiction under the pen name PIPPA GREEN." Dkt. 24 at 14, ¶¶ 12, 13. BLL demanded on September 26, 2022, that Defendants "cease and desist" using the PIPPA GREEN pen name, and "within weeks" Defendants, with BLL's consent, had "rebranded and adopted the pen name EDEN DUNN." *Id.* ¶ 14.

Despite rebranding to stop writing and selling words under the PIPPA GREEN pen name, Defendants argue that PIPPA GRANT is "not protectable as a common law trademark and is not registerable as a trademark with the United States Patent Office ("USPTO")." *Id.* at 15, ¶ 16. Defendants claim that BLL knowingly submitted false information to the USPTO to register the PIPPA GRANT word mark. Specifically, Defendants claim that BLL misrepresented in its January 18, 2019 application that "it [was] the owner of the mark and source of the goods claimed, not Jamie Farrell." Dkt. 24 at 19, ¶ 39. Defendants point to the February 2019 Voluntary Amendment, where Jamie Farrell represented that the PIPPA GRANT mark identified her, and that she publishes and controls the quality of books written under the mark, as contradicting BLL's January 2019 statement. Thus, Defendants allege that BLL knowingly

---

[3] The Counterclaims contain a typographical error indicating the document states that "the above referenced mark contains the name 'Pippa *Green*,' which identifies me, Jamie Farrell." Dkt. 24 at 13, ¶ 9 (emphasis added). However, "in the event of conflict between the bare allegations of the complaint and any exhibit attached" the attached document controls. *Fayetteville Investors v. Commercial Builders, Inc.,* 936 F.2d 1462, 1465 (4th Cir.1991).

submitted an "inaccurate application, affidavit, and written consent to the USPTO" making materially false statements with the intent to deceive the USPTO and procure the Registration. Dkt. 24 at 20, ¶ 40.

## II.     Law & Analysis

When deciding a motion to dismiss, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). However, a complaint does not satisfy this standard with only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). The complaint must assert facts that "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Fraudulent procurement is a type of fraud claim and subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). Defendants must plead this counterclaim with particularity, which requires them to "at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Bakery & Confectionary Union & Indus. Int'l Pension Fund v. Just Born II, Inc.*, 888 F.3d 696, 705 (4th Cir. 2018) (citation omitted) (explaining that these facts are "are often referred to as the who, what, when, where, and how of the alleged fraud"). "Fraud in procuring a trademark registration or renewal occurs when an applicant knowingly makes false, material representations of fact in connection with his application." *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009).

Rule 12(f) permits the court to "strike from a pleading any insufficient defense." Fed. R. Civ. P. 12(f). While "Rule 12(f) motions are generally viewed with disfavor," a defense that

might confuse the issues in the case and would not "constitute a valid defense to the action can and should be deleted." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) quoting 5A A. Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1380, 647 (2d ed.1990).

### A. Fraudulent Procurement of a Trademark Registration

To succeed on their fraudulent trademark procurement counterclaim, Defendants must show that BLL "knowingly made false, material representations of fact and intended to deceive the Patent and Trademark Office." *Resorts of Pinehurst, Inc. v. Pinehurst Nat. Corp.*, 148 F.3d 417, 420 (4th Cir. 1998). Jamie Farrell, Defendants concede, is the sole member of BLL.[4] Dkt. 33 at 2. However, the parties disagree on whether that reality permitted BLL to represent in its trademark application that it was the owner of the PIPPA GRANT mark, or whether Jamie Farrell owned PIPPA GRANT instead.

Defendants rest their counterclaim for fraudulent registration on the principle that a corporate entity is "separate and distinct from its owners," and that the "USPTO requires the applicant seeking to register the mark to be the owner of the mark." Dkt. 33 at 7. Defendants then identify the "crux of the problem" for BLL as its subsequent identification of "Ms. Farrell as the Applicant in its Voluntary Amendment." Dkt. 33 at 7. Defendants explain that "[e]ither Plaintiff is the owner of the PIPPA GRANT mark and the Voluntary Amendment [claiming Jaimie Farrell is the Applicant] is false" *or* the Voluntary Amendment is correct, that Jamie Farrell is the Applicant, but then the Registration is void, because only the owner of a mark may register the mark as the Applicant. *Id.* at 7-8. Defendants also state that, because Jamie Farrell

---

[4] BLL had asked the Court to take judicial notice that Jamie Farrell is the sole member of BLL (Dkt. 28 at 6) and Defendants subsequently agreed. Plaintiff also asks the court to take judicial notice that self-publish is a term of art in the book industry. Dkt. 34 at 10. However, as the Court need not determine the meaning of self-publish in making this ruling, I will not take judicial notice of this term.

self-publishes the books, BLL's representation in its Application that it used the mark for a series of fiction books and audiobooks in International Classes 16 and 19 was materially false.

BLL maintains that it owns the PIPPA GRANT mark, and that as the sole member of BLL, Jamie Farrell also has ownership interest in the PIPPA GRANT mark and is authorized to sign on BLL's behalf. BLL further contends that Jamie Farrell's Affidavit indicating she self-publishes the books and therefore "control[s] their quality" does *not mean* that BLL does not control the quality of the goods associated with the PIPPA GRANT mark. Rather, BLL contends that both things are true at the same time - that Jamie Farrell publishes and controls "the books branded with the PIPPA GRANT pen name both in her capacity as the sole member of BLL and as the author." Dkt. 28 at 9-10.

Defendants contend that because "either the Application or the Voluntary Amendment [must be] materially false" they state a claim for fraudulent procurement of a trademark registration in Counterclaim Count Three. Dkt. 33 at 6. However, I am unpersuaded by this reasoning. At most, Counterclaim Count Three alleges that the Voluntary Amendment contains a false statement; however, what it does not allege is the required intention or a "willful deception" by BLL to mislead the USPTO, sufficient to withstand a motion to dismiss. "A number of courts have held that procurement of a trademark registration through the use of false or misleading statements does not constitute fraud within the meaning of 15 U.S.C. § 1115(b)(1) unless the statements were both material to the decision to grant the registration and made with a deliberate intent to defraud." *Brittingham v. Jenkins*, 914 F.2d 447, 453–54 (4th Cir. 1990).

Defendants have not alleged the required intent to defraud by BLL, and, of course, I recognize that fraudulent "intent ... may be alleged generally." Fed. R. Civ. P. 9(b).  However, Defendants have alleged nothing beyond insufficient "labels and conclusions" to show that any

6

false statement was more than simply a mistake, or misunderstanding.[5] "There is no fraud if a false misrepresentation is occasioned by an honest misunderstanding or inadvertence without a willful intent to deceive." *In re Bose Corp.*, 580 F.3d at 1246. The documents signed by Jamie Farrell and attached to the Voluntary Amendment – the Written Consent for Use of Name and the Affidavit do not by themselves show such willful intent to deceive, and in fact, these documents list the Applicant as "Bang, Laugh, Love, LLC" in the heading. Dkt. 24-2 at 4, 5. The sole source of any confusion about the identity of the Applicant comes from a "miscellaneous statement" indicating that the "Affidavit is signed by Applicant" when, of course, the Affidavit is signed by Jamie Farrell, not BLL. *Id.* at 2, 3. However, as stated, the Affidavit itself lists the Applicant as BLL, the trademark is registered in the name of BLL, and both parties agree that Jamie Farrell is the sole member of the limited liability company BLL. Further, as BLL points out, under 15 U.S.C. § 1052(c) and TMEP §§ 813.01(a) and 1206.04(a), Jamie Farrell was required to personally sign a written consent for BLL to register her name as a trademark. As pertinent here, 15 U.S.C. § 1052(c) provides that registrable trademarks that consist of a name identifying a "particular living individual" can only be registered with the written consent of the individual. Because Counterclaim Count Three lacks the required factual allegations to show an intent to deceive the USPTO, Defendants have not "nudged their claim across the line from conceivable to plausible," and cannot withstand the motion to dismiss. *Twombly*, 550 U.S. at 570.

### B. Affirmative Defense Based on Fraud

I likewise find that Affirmative Defense No. 4, that "Plaintiff's Registration was obtained fraudulently and is not entitled to protection" fails to meet the heightened pleading standard in

---

[5] Defendants instead write that "[issues] concerning Plaintiff's intent are factual matters inapplicable to Plaintiff's Motion to Dismiss." Dkt. 33.

Rule 9, requiring fraud be pleaded with particularity. The Fourth Circuit has held "that defendants must satisfy Rule 9(b) when they plead affirmative defenses sounding in fraud." *Bakery & Confectionary Union & Indus. Int'l Pension Fund*, 888 F.3d 696 at 704.

Rule 12(f) is a drastic remedy "generally viewed with disfavor" and a motion to strike should not be used to settle questions of disputed fact. *See e.g. Mod. Pharmacy, LLC v. J M Smith Corp.*, No. 7:19-CV-1218-TMC, 2020 WL 13490927, at *4 (D.S.C. Mar. 18, 2020). However, a court may, in its discretion, strike from a pleading any "insufficient defense" or "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Again, to show a trademark was obtained fraudulently, Defendants must show BLL "knowingly made false, material misrepresentations of fact and intended to deceive the" USPTO in its application. *Resorts of Pinehurst, Inc.*, 148 F.3d at 420. Here, in Affirmative Defense No. Four, Defendants state only that "Plaintiff's Registration was obtained fraudulently and is not entitled to protection," and have failed to plead facts supporting its claim that BLL knowingly misrepresented material facts in its trademark application. Defendants have failed to state with the required particularity facts to support Affirmative Defense No. 4, and the Court will grant the motion to strike.

### V. Conclusion

Accordingly, I will grant both Plaintiff's Motion to Dismiss Counterclaim Count Three and Motion to Strike Affirmative Defense No. Four.

An appropriate Order accompanies this Memorandum Opinion.

Entered: April 18, 2024

*Robert S. Ballou*

Robert S. Ballou
United States District Judge